## Williams v. City of Newport et al.

(Decided June 4, 1929.)

LOUIS REUSCHER for appellant.

BLAINE McLAUGHLIN for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant was a lieutenant of police in Newport. The police department in the city is controlled by a commissioner of safety under the commission form of government, and it consists of a chief of police, lieutenant, or night chief, sergeants, or patrolmen. The city is divided into districts, and the districts are patroled by officers who work in three shifts of eight hours. Morris Hodesh and Michael Cassidy were patrolmen, and on the night of July 31, 1927, their duties required them to patrol certain parts of the second district. On the call of the roll on that night Cassidy did not respond, and Hodesh took the beat alone. Whether that was his fault, or the fault of appellant, is not material. It is not certain whether he asked that some one else be assigned to patrol that district with him, or whether he undertook to work by himself without complaint. But, at all events, Hodesh reported to the chief of police and the commis-

sioner of safety that appellant had compelled him, over his protest, to patrol his beat alone and without the aid of a partner, and that appellant had failed and refused to assign some one else to work with him. When appellant learned of this report he was indignant, and, when the officers and patrolmen assembled in the office on the evening of August 4, appellant, according to the testimony of Hodesh and Cassidy, berated them soundly, cursed and abused them, and applied to them opprobrious epithets, and offered to fight with Hodesh. Appellant testified about the encounter with the two patrolmen, and admits that he accosted Hodesh and asked him about the report which he had made to the chief of police and the police commissioner. He admits that there was some very heated language used between him and Hodesh, but he places the blame for it on the patrolmen.

The chief of police on the 15th day of August filed charges against the appellant, and he was notified to appear before the board of commissioners of the city of Newport, acting as a board of civil service commissioners, and, after hearing the proof, the board of commissioners sustained the charges, and appellant carried the proceedings to the circuit court for a review of the action of the board of commissioners. The charter of the city of Newport, which is a city of the second class, by the provisions of sections 3137 to 3138-5, Ky. Stats., provides for the appointment of policemen and firemen on the merit system, with power in the legislative branch of the city to suspend, or dismiss, them from the service, after hearing on specific charges, with the right of appeal by the person found guilty, first, to the circuit court, and then to the Court of Appeals. Section 3138-4, Ky. Stats., prohibits the removal of a member of the police force, or reduction in grade or pay, except for inefficiency, misconduct, insubordination, violation of law, or violation of the rules adopted by the commissioners. The rules adopted by the commissioners provide for reprimand, suspension, reduction in pay, or dismissal according to the nature and aggravation of the offense, for many specifically named causes, among which are insubordination or disrespect to a superior officer, cowardice, inefficiency, or neglect in the performance of duty, or disobedience of the orders of a superior, or such mental, physical, or educational incapacity or disability as renders him incapable of properly performing his duties.

Section 8 of Ordinance No. 813 of the city of Newport regulating the police and fire departments prescribes certain penalties for certain offenses, one of which is using indecent, profane, obscene language while on duty or in uniform, and another is conduct unbecoming an officer or prejudicial to the service. The charges against appellant were that he had been guilty of conduct unbecoming an officer and prejudicial to the service; that he had been guilty of conduct rendering him unfit and improper person for employment by the city. The charge then specifically alleges the language that he used in addressing Officers Hodesh and Cassidy on the evening of August 4th, and further alleges that his conduct on that occasion was an attempt to intimidate members of the police force from reporting matters pertaining to their beats to the commissioner of public safety, and to keep the commissioner of public safety in ignorance of what had transpired.

The charges were heard on appeal in the circuit court, and that court, after considering the statutes, rules, ordinances, and charges, entered a judgment sustaining the action of the board of commissioners. The trial judge, in his opinion, went into the matter rather thoroughly, showing that he had given consideration to every phase of the case. We quote in part from the opinion of the trial judge:

"The testimony shows that the controversy between Lieutenant Williams and Officers Hodesh and Cassidy arose over the fact that Hodesh was compelled to serve in the second district, the colored belt and worst beat in the city of Newport at night time, alone, contrary to the custom that two men should run this beat together, and he complained to the chief of police on this account. This happened on Sunday night prior to the 4th of August; that on August 4th Hodesh and Cassidy reported for duty at about six forty-five P. M.; they were approached by Lieutenant Williams in the rear of the squad room, who, according to their testimony, without any excuse, called them vile names such as 'you heel, you, you snake, you stool pigeon, you God damn dirty Jew, you went up and told Chief Bregel I didn't put any one with you on Sunday night. I can take you up in the Armory Hall and knock hell out of you.' Hodesh said, 'I don't want to argue with you. He

used the same language to my friend Cassidy.' Cassidy in substance testified to the same things as testified to by Hodesh.

"Other officers who were in the vicinity of the squad room heard arguing and loud talk between the Lieutenant and these two officers, but could not repeat the exact language used by them. Some of them however said they heard Hodesh tell Williams 'that if he wasn't so old he would take him up in the Armory and whip him.' Williams answered 'that it wasn't necessary to climb the steps, and if he were four feet wide, three and a half feet of Hodesh would be yellow.' "

The trial court, in his opinion, then recited the testimony of the appellant, and proceeded with his opinion as follows:

"If the testimony of the witnesses for the city is to be believed, the charge of misconduct and conduct unbecoming an officer, or prejudicial to the service, is fully established, and in accordance with the admissions of the Lieutenant himself in permitting the subordinate officer to use the language to him which he stated Hodesh used, his conduct in not suspending him then and there indicates that he is not a proper person to hold any position on the police force of the city, and tends to support the testimony of the officers; that the specific charge against him, that his conduct was an attempt to intimidate members of the police force in reporting matters pertaining to their beats to the Commissioner of Public Safety and to keep said Commissioner in ignorance of what was transpiring in the Police Department, seems to have been established by the testimony, beyond any question of doubt.

"This court does not desire to control the police department of the city, and if there is testimony sufficient to support the findings of the Commissioners in the case of this character, it is constrained to uphold same. They are the servants of the people and should be given some latitude in enforcing the laws, rules and regulations of their departments, otherwise if the members of the department feel that they can be kept on the force, whether they deserve it or not, by order of this court, they will be inclined to disrespect their superior officers and violate the rules of their department."

The conclusions of the trial court are supported by the evidence, and the reasons for his conclusions are admirably stated.

This court has held that in such proceedings the evidence must establish that the officer charged with a violation of the laws, ordinances, or rules of the commissioners must show that the guilt of the officer was reasonably certain before punishment could be inflicted. Sizemore v. Commonwealth, 202 Ky. 273, 259 S. W. 337; French v. Commonwealth, 198 Ky. 512, 249 S. W. 761; Barney v. City of Ashland et al., 220 Ky. 657, 295 S. W. 998.

The evidence in the case before us, as found by the trial court, well supported the charges. The General Assembly has wisely placed the regulation of the police force in cities in the hands of the local authorities selected by the people. The officers whose duty it is to enforce the laws, rules, and regulations may not act arbitrarily, but the court should not unduly interfere with their duties in inflicting penalties on the members of the force. As long as the evidence is reasonably sufficient to uphold the action of the board of commissioners, their action should not be disturbed by courts.

Judgment affirmed.