# Armstrong v. Board of Civil Service Commissioners of City of Newport.

(Decided April 19, 1932.)

BLAINE McLAUGHLIN for appellant.

ARTHUR J. DALY for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

John Armstrong was a member of the police department of the city of Newport. Charges were preferred against him by the chief of police, and he was given a trial before the board of civil service commissioners resulting in his dismissal from the service. He prosecuted an appeal to the circuit court, where the action of the board was sustained. The present appeal is from the judgment of the circuit court.

Newport is a city of the second class, and its police force is governed by section 3137 et seq., Ky. Stats., and ordinances pursuant thereto. Policemen may be sus-

pended or dismissed only upon specific charges and after a fair hearing. They are given the right of appeal to the circuit court and then to this court. Section 3138-5, Ky. Stats. It is the practice of this court to repose confidence in the findings of the board of civil service commissioners, and of the circuit court, but the evidence must be reasonably sufficient to sustain the charges preferred. Williams v. City of Newport, 229 Ky. 810, 18 S. W. (2d) 283. The charges must be definite and certain and of such character as to establish inefficiency, misconduct, insubordination, or violation of law on the part of the accused officer. Bregel v. City of Newport, 208 Ky. 581, 271 S. W. 665. The statute was designed to enable the city to provide an efficient, law-abiding capable, and honest police force, and ample power is given to achieve the ends desired. But at the same time the individual officer is protected against the exercise of arbitrary power and unjust or unauthorized removals from office cannot be upheld. The question before us is whether the evidence in the present case supported the charges. The charges were, first, that the policeman had failed to make an arrest for offenses committed in his presence; and, second, that he had sworn falsely in an examining trial. The specification under the first charge was that the officer had reasonable grounds to believe that the crime of grand larceny was being committed in his presence, and he willfully refused to arrest the person committing the offense.

There was a further incidental charge that the officer had failed to arrest a man for flourishing a deadly weapon in his presence. The specification under the second charge was that on the preliminary trial of a person accused of grand larceny the officer had testified that one of the witnesses for the city had been drunk and staggering, and that the policeman had never seen him in a sober condition, although he had known him for about three months. The testimony tended to show that the policeman was agent for his brother, who owned a tenant house occupied by William Hudson, Frank Martin, and a housekeeper. The tenants were unsatisfactory, and Armstrong had taken steps to secure possession of the house. On November 5, 1930, Armstrong happened along when Martin and Hudson were engaged in a controversy. Hudson asserted that Martin, who was moving out of the house, was taking some of Hudson's personal property. Martin insisted that the property was

his own. The officer was not on duty, was dressed in plain clothes, and was engaged in private business. He directed the two persons to go into the house and heard their respective statements. He did not make any arrest. Hudson procured a warrant for Martin, accusing him of grand larceny, and an examining trial was held, at which Armstrong testified on behalf of Martin. Martin was held to the grand jury, but no indictment was returned. That transaction was the source of the present controversy.

The transcript of the testimony in the police court was competent, when duly authenticated, to show what Armstrong swore before the police court, but it was not competent for any other purpose in this case. It is not apparent from the testimony that Armstrong was under any duty to make an arrest. The men involved in the argument were his tenants, and he was trying to get them out of the house. They were disputing as to the ownership of personal property, which dispute the officer could not decide. Although Hudson had a knife and Martin appealed to Armstrong for protection, Hudson readily obeyed the suggestions of the landlord, and did not show any purpose to commit violence.

Without attempting to define the duties of an officer under all circumstances, we think Armstrong was clearly justified in the exercise of a reasonable discretion in refusing to go farther on the occasion in question. It cannot be accepted as a rule of law that an officer at his peril must arrest every person accused by another. He must have reasonable grounds to believe that an offense is being committed, and the facts adduced in the present instance fall short of that essential condition. Certainly there was no reasonable ground for a belief that Martin was boldly trying to steal the property of Hudson. While Hudson did have a knife, he manifested no purpose to use it, and was obedient to the pacifying suggestions of Armstrong. There was an entire absence of evidence that Armstrong had willfully failed in any official duty to arrest either of the parties involved in the argument.

There was likewise a total lack of evidence to sustain the second charge. The testimony that Hudson was drunk and staggering and was never seen sober had corroboration from several sources. There was abundant proof that Hudson was habitually intoxicated. Helming,

who had known him for eight years, said that Hudson was a daily drinker, regularly intoxicated, and had been discharged by his employer for drunkenness. Sauers had known him for three years, and had seen him come to work regularly in an intoxicated condition. Sometimes he was said to be "nice and drunk," and sometimes "just drunk." Johnson, a next door neighbor, said Hudson was drunk at the same time referred to by Armstrong, and the fact was corroborated also by Hirschner. Martin, who lived in the house with Hudson, said the latter had been drinking all the time they had resided together. There was no proof that Armstrong had ever seen Hudson when he was sober. In so far as this record shows, the testimony of the officer was literally accurate. Certainly there was no proof tending to show that Armstrong had committed perjury or false swearing. The evidence rather supports the position of the officer that Hudson was the trouble maker. He was hopelessly addicted to the use of intoxicating liquor, had been committed to an insane asylum, and had mistreated his housekeeper.

The opinion of the circuit judge indicated serious doubt as to the truth of the charges, but he was persuaded by the testimony of Armstrong that he was not an efficient officer. We have read and re-read the testimony of Armstrong and find nothing therein tending even remotely to sustain either of the charges against him. The statement of Hudson that Armstrong had offered him $25 not to appear against him was denied by Armstrong, and it was not embraced among the charges preferred. Fair play demanded an exoneration of the accused, when the charges against him were not sustained. The right and power of the city to rid itself of dishonest, inefficient, and incompetent officers cannot be doubted or denied, but the just rights of an accused officer must be respected. He may not be dismissed in the absence of specific charges and legal evidence sufficient to justify such drastic action.

The judgment is reversed, with directions to set aside the order of dismissal and to reinstate the appellant as a member of the police department.