# Northcutt, Chief of Fire Department, et al. v. Hardebeck.

(Decided June 10, 1932.)

(As Extended on Denial of Rehearing October 7, 1932.)

SAMUEL W. ADAMS and RALPH RICH for appellants.

BLAKELY & MURPHY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellee, A. W. Hardebeck, was a member of the fire department of the city of Covington, which is one of the second class. Section 3138-4 of the 1930 Edition of Carroll's Kentucky Statutes, and which is a part of the charter of cities of the second class, prescribes that a member of the police or fire departments of second-class cit--

ies may be suspended or removed by the commissioners of the city for "inefficiency, misconduct, insubordination or violation of law or of the rules adopted by the commissioners." The section also prescribes the method of arraignment, rules of procedure, and for the penalty upon conviction. The next following section (3138-5) provides for an appeal to the circuit court from the decision of the board of commissioners by the convicted officer if the punishment is of the named grade to entitle him to it, and prescribes the practice whereby he may prosecute such appeal. Prior to the occurrences here involved the commissioners of the city enacted and promulgated rules for the conduct of the fire department and its members, and which was done by Ordinance No. 2422. Subdivision (n) of section 10 thereof says:

"Members shall be free from the influence of liquor. They shall not bring liquor into or keep liquor in any fire department premises."

On March 9, 1931, appellee was on duty at fire station No. 5 in the city from 7 a. m. until some time on the next day. At about 7:30 p. m. on that day an alarm of fire was turned into that station, and it was his duty to drive the fire wagon loaded with extinguishing apparatus to the scene of the fire. Above the ground floor of the station house were sleeping quarters, and at the time of the alarm, and for some time prior thereto, appellee had been and was asleep in one of the beds in that apartment. Besides the alarm bell that the turning in of the signal produced, other gongs and signals were sounded, but appellee did not report for duty. A report of the occurrence was made to the chief of the fire department of the city, and he investigated the matter and concluded that appellee was intoxicated, and he so reported to the mayor, followed by the preferring of charges and a trial before the board which resulted in discharging the appellee as fireman. He appealed to the circuit court, and upon that hearing the finding of the commissioners was reversed, and they were ordered and directed to reinstate him to his former position. From that judgment the city, through its proper officers, prosecutes this appeal, and appellee has moved to dismiss it upon the ground that the statute supra (section 3138-5) does not grant the right of appeal by the city, or its commissioners from the circuit court to this one, and which presents the first question for determination.

The statute in giving the convicted officer, in certain contingencies, the right of appeal to the circuit court, expressly says that the appeal in that court shall be "tried de novo by the judge of said court." Its language conferring the right of appeal to this court from the circuit court is:

"An appeal will lie from the judgment of the circuit court to the court of appeals, as in other cases, provided the punishment fixed by the board be suspension for more than sixty days, reducing the grade of an officer, removal or dismissal from the force."

It is argued in support of the motion to dismiss, that, inasmuch as no appeal from its decision by the city or the board to the circuit court is expressly mentioned in the statute, but only for one to be prosecuted by the convicted officer, no appeal can be taken from the decision to the circuit court except by the latter, and from that premise it is argued that the same limitations necessarily prevail concerning appeals from the circuit court to this one, i. e., that the right is confined to the convicted officer, if the circuit court judgment affirms that of the board, and that this appeal prosecuted by the latter is without authority and cannot be maintained.

We, however, do not so construe the statute. The right of appeal to the circuit court from the decision of the board is necessarily confined to the officer on trial after his conviction before that tribunal, since *it* could not appeal from its own decision, whether it was in favor of or against the accused. But, after the investigation becomes transferred to another tribunal where the trial is a de novo one, then, by the express terms of the statute granting the right of appeal to this court, either party may prosecute an appeal from the judgment of the circuit court "as in other cases." There is nothing in the above-inserted language from the statute remotely indicating any intention on the part of the Legislature to give the right of appeal from the judgment of the circuit court to only one of the parties to the investigation. The interpretation of it, as so outlined, is inescapable, so much so as that there is no room for a contrariety of opinion, and from which it results that the motion by appellee to dismiss the appeal is without merit, and it is overruled.

The only question in the case is one of fact, and which is: Was appellee intoxicated upon the occasion referred to? In addition to the charge above mentioned, another one was made that he was also intoxicated under the same circumstances in 1928, and there was some evidence to sustain it. However, it is not insisted on here and the ordinance containing the rules was passed on April 24, 1930, after that alleged intoxication, and it is doubtful if the requirement of the adopted rule would apply to past occurrences. So that we will confine the discussion to the charge of intoxication on March 9, 1931.

The chief of the fire department, F. A. Northcutt, testified that about one hour after the fire signal was given on the day in question he (witness) saw appellee, who had sought him out for some purpose, and that at that time he showed every indication of being under the influence of liquor. His breath was pungent with alcoholic odors, and he at that time asked for and obtained from witness a leave of absence to go to his home, and which he immediately did. Frank A. Bender, a member of the department at the same station, stated that he could not say that appellee was drunk on that particular occasion, but that he ''acted like he was drinking.'' J. H. Bush, another member, testified to the apparent nervous condition of appellee, and that his breath emitted strong odors of whisky.

A captain of the department, William Bitters, who was off duty on the particular occasion, but regularly in the employment, testified that appellee called him up just before the fire and wanted witness to come and take his place because appellee's wife was sick at home and he wanted to be with her. When witness later met him, he stated that his wife was not sick, but that he himself was sick and wanted to go home. Witness suggested that he take a rest on one of the beds upstairs. We have omitted details given by the witnesses, and have stated only the ultimate effect of their testimony. When dealt with or considered as a whole, there is little room for doubt as to the truth of the matter, it being most convincing that appellee was intoxicated on the occasion to which the charge was directed.

Opposing that testimony, appellee introduced but two physician witnesses, Dr. Peter Meier and Dr. James Riffe. Dr. Meier testified that on the next day, March 10, he professionally visited appellant at his home and stated that the latter complained that he had been

"feeling bad for quite awhile"; that the witness noticed some bronchial rales in his chest and concluded that his ailment "might be bronchitis"; that he was sensitive over the gall bladder area and over his stomach; that his temperature was normal and his pulse rapid; and that he had a slight cough and for all of which a cough remedy was prescribed, with directions for the patient "to take a tonic and let me know further if anything went wrong." Witness again saw him on the 12th, when appellee had the same symptoms, but with marked improvement. On cross-examination witness was asked, "Would excessive drinking tend to cause it?" (meaning his symptoms and conditions), to which he answered, "It may cause some tenderness in that area, yes sir." He was then asked if the conditions he found would "cause a man to sleep more soundly than he would if he was in good health," to which he answered, "Unless the pain was as severe as it was at that time, it would keep him from sleeping."

Dr. Riffe also called on appellee the same day as Dr. Meier, but after the latter had left. That witness did not make a careful examination of appellee, but did take his temperature and pulse rate, and found the latter to be 100, or about 28 above normal. Witness found some irritation in appellee's throat, but he made no examination of his gall bladder, and he did not consider his condition serious, and said that "drink always stimulates the pulse rate or the heartbeat." He was asked to give some of the symptoms usually following intoxication, and among them were "irritation of the throat and stomach, and nervous depression," with a rapid pulse. He also stated, in answer to a question if appellee on that occasion had the symptoms following such intoxication, to which he answered: "Well, he had the increased pulse rate, his face was flushed, he had an irritated throat, that is about all I could see about his physical appearance."

Appellee did not testify, and consequently denied nothing that any of the witnesses stated. From the testimony as so outlined, it is difficult for us to see how the court came to the conclusion it did. The testimony heard in substantiation of the charges is practically undenied. When that offered by appellee is analyzed and scrutinized, it consists, as will be remembered, of a fellow fireman testifying that he discovered no indications of intoxication, and the testimony of Drs. Meier and Riffe

as to the physical conditions and symptoms of appellee on the day after the alleged intoxication is not inconsistent with an intoxicated condition on the day before. On the contrary, Dr. Riffe unhesitatingly stated that the conditions and symptoms that he observed were usual ones following intoxication.

Of all the persons in the world who would know the facts in regard to the matter it would seem to be the appellee himself. This is not a criminal case, and the trier of the facts has the right to consider the refusal of the accused to testify, and to refute, by denial or otherwise, the testimony introduced against him if he can truthfully do so; and the fact that he so defaulted may be considered as a potent one against him. Coupling such refusal with the testimony introduced by appellee's accusers, renders the proof most convincing to a reasonable mind (almost beyond a reasonable doubt) that the accusation was true, and for which reason, we repeat, that the testimony does not sustain the conclusion of the trial court. To say the least of it, his finding should be considered as flagrantly against the evidence, and which would be sufficient to authorize its reversal by us, since this is a purely civil proceeding.

In the case of Williams v. City of Newport, 229 Ky. 810, 18 S. W. (2d) 283, 284, the same character of proceeding under the same statute was involved, but relating to accusations against a policeman of the city of Newport, also a city of the second class in this commonwealth. The conduct of the officer in that case was one of a different character from that here involved, but for which the statute authorized a dismissal. The board sustained the charges, which was affirmed upon appeal to the circuit court, and on appeal therefrom by the accused officer that judgment was affirmed. In the opinion it was held that "in such proceedings the evidence must establish that the officer charged with a violaton of the laws, ordinances, or rules of the commissioners (and) must show that the guilt of the officer was reasonably certain before punishment could be inflicted," citing, among others, the case of Barney v. City of Ashland, 220 Ky. 657, 295 S. W. 998, involving a similar proceeding.

It was further said in the Williams opinion:

"The General Assembly has wisely placed the regulation of the police force in cities in the hands

of the local authorities selected by the people. The officers whose duty it is to enforce the laws, rules, regulations may not act arbitrarily, but the court should not unduly interfere with their duties in inflicting penalties on the members of the force. As long as the evidence is reasonably sufficient to uphold the action of the board of commissioners, their action should not be disturbed by courts.''

That excerpt with similar expressions found in the Barney opinion, expresses the correct rule in the investigation of such questions on appeal to the courts, and lays down the rule for the proper measuring of the testimony by them. It is therein stated, in substance, that the commissioners in the investigation of such charges may not act arbitrarily, but that punishment of the recalcitrant officer is justified when the evidence shows that his guilt is ''reasonably certain.'' We think the testimony in this case undoubtedly measured up to that standard, if not more convincing, and that the court erred in determining otherwise and in reversing the order of the board.

The duties of a member of the city fire department are such as demand full possession of all his faculties at all times while so engaged, and there can be no question about the propriety of the involved rule in this case, since intoxication would render a member (and especially if his duties were to drive the fire wagon over the streets of the city to the place of the fire) wholly inefficient, as well as dangerous to others using the streets, to say nothing about possible total dethronement so as to render the member wholly incapable in such an emergency.

Wherefore the judgment is reversed, with directions to enter one in conformity with this opinion.